Jeffrey Rice
c/o P.O. Box 1474
Grants Pass, Oregon 97528
(541) 291-9328

FILED'08 DEC 08 14:14USDC-ORM

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| Jeffrey Rice<br><br>      Plaintiff,<br><br>      vs.<br><br>HOUSEHOLD FINANCE CORP. II;<br><br>MERSCORP, INC.;<br><br>MORTGAGE ELECTRONIC REGISTRATION<br>SYSTEMS, INC.;<br><br>SECURED FUNDING CORP.;<br><br>REGIONAL TRUSTEE SERVICES CORP.;<br><br>HSBC MORTGAGE SERVICES INC.;<br><br>UNKNOWN OWNERS OF THE EVIDENCE OF<br>THE DEBT and/or OWNERS OF THE NOTE;<br><br>      Defendants. | Case No. 08-3131-CL<br><br>**VERIFIED COMPLAINT**<br><br>  **Quiet Title / Ejectment / Trespass,**<br><br>**TILA (15 U.S.C. § 1601 et seq.),**<br><br>**Breach of Contract,**<br><br>**Unjust Enrichment,**<br><br>**RESPA (12 U.SC. § 2601 et seq.),**<br><br>**Nuisance / Wrongful Foreclosure,**<br><br>**FDCPA (15 U.S.C. §§ 1692_1692p)**<br><br><br>[Supplemental State Claims] |

## Preliminary Statement

1.    Defendants violated and impaired Plaintiff's Constitutional rights, statutory and common

law rights to own property and the privacy of their home. My home is my castle.

COMPLAINT                                                                                                    1

# 1470

2.      This action is an action for damages and equitable relief, including compensatory damages, punitive damages and costs, but excluding FRCP 9(g) "special damages," to quiet the title to Plaintiff's property, to restore Plaintiff to possession of his property, to redress violation of the Plaintiff's constitutional and statutorily protected rights, state statutory and common law rights.

3.      Plaintiff seeks rescission of the loan agreement, cancellation of the Note and Mortgage, restoration of title to the property in Plaintiff's names, restitution of all money, including loan fees, paid by Plaintiff, restitution of all closing costs paid by Plaintiff for said loan, restoration of possession to the property to Plaintiff, and other equitable relief as this Court deems proper.

4.      In this Complaint, allegations marked (*) are made upon information and belief, and are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.  All other allegations are made of personal knowledge.

### Jurisdiction and Venue

5.      Jurisdiction is under including but not limited to 12 U.S.C. § 2614; 28 U.S.C. §§ 636, 1251, 1331, 1332, 1338, 1345, 1346, 1348, 1362, 1367, 1491, 1652, 2201; 12 U.S.C. §§ 632, 2605(f), 2607(d)(2), 2610, 3416;  15 U.S.C. §§ 4, 45, 687c, 1051, 1121, 1640, 1641(a), 1692k, 1681p. The Plaintiff requests that this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.      Venue for this action lies in this district since:

(a) Defendants are subject to personal jurisdiction of the State of Oregon and have sufficient contacts with this district under 28 U.S.C. § 1391 (b)(2).

(b) Substantial acts and omissions in this action occurred in this district under 28 U.S.C. § 1391 (b) (2) and/or (c).

2

COMPLAINT

7.      This matter is properly filed in this District. The claims arose in this District and all

Defendants reside and/or do business in this District.

**Parties**

8.      Plaintiff is a citizen of Oregon.

***MERSCORP***

9.      Defendant MERSCORP, INC. is a Delaware corporation which owns, and is responsible

for the actions of, Defendant MERS.  Its shareholders are various companies engaged in the

business of mortgage banking.[1]

10.     Defendant MERSCORP, INC. has its principal place of business in Vienna, Virginia and

can be served with process through its registered agent, C T Corporation System, at 388 State

Street Suite 420, Salem OR 97301.

11.     (*) MERSCORP, INC. has no other function than to own MERS, and conducts no business

in its own name.

***MERS***

12.     Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") is

a nonprofit organization and is a wholly-owned subsidiary of Defendant MERSCORP, INC.

MERS is incorporated in Delaware and has its principal place of business in Vienna, Virginia.

---

[1] The Defendants' shareholders include: ABN-AMRO Mortgage Group, Inc.; American Land Title Association; CCO Mortgage Corporation; Chase Home Mortgage Corporate of the Southeast; CitiMortgage, Inc.; Commercial Mortgage Securities Association; Corinithian Mortgage Corporation; Countrywide Home Loans, Inc.; EverHome Mortgage Company; Fannie Mae; First American Title Insurance Corporation; Freddie Mac; GE Mortgage Services, LLC; GMAC Residential Funding Corporation; Guaranty Bank; HSBC Finance Corporation; Merrill Lynch Credit Corporation; MGIC Investor Services Corporation; Mortgage Bankers Association; Nationwide Advantage Mortgage Company; PMI Mortgage Insurance Company; Stewart Title Guaranty Company; SunTrust Mortgage, Inc.; United Guaranty Corporation; Washington Mutual Bank; Wells Fargo Bank, N.A., and WMC Mortgage Corporation.

COMPLAINT

MERS is not in good standing in Delaware. Currently, and at all times relevant to this Complaint, MERS' permission to do business in Oregon is "suspended."

13.     (*) MERS was created by the mortgage industry to enable high-speed trading of loans, and packaging of loans into pools, via electronic means, without recording any Assignments in the county property records. MERS' computer software was written by Ross Perot's company, EDS. MERS possesses user manuals for all such software.

14.     However, from a legal point of view, the computer/electronic aspect of MERS is not significant. Everything that MERS does, and everything that is done through MERS, could have been done before the age of computers, using traditional oral and written communication methods.

15.     (*) There is no government agency that regulates or oversees MERS.

*LENDER*

16.     Defendant SECURED FUNDING CORP. is a California corporation doing business in Oregon.

17.     The name "SECURED FUNDING CORP., A CALIFORNIA CORPORATION" appeared as "Lender" on the closing documents of the Loan, meaning SECURED FUNDING CORP.

18.     Defendant SECURED FUNDING CORP. was also the original servicer for the Loan.

19.     (*) SECURED FUNDING CORP. is a member of MERS and is an independent processor of mortgage applications.

20.     Defendant SECURED FUNDING CORP. can be served with process at its place of business, 2955 Red Hill Ave, Costa Mesa, CA 92626.

*SUCCESSOR SERVICER*

4

COMPLAINT

21.     Defendant HSBC MORTGAGE SERVICES INC. ("Successor Servicer") is a Delaware corporation doing business in Oregon, and is the current servicer for the Loan, the successor to the original servicer.

22.     Defendant HSBC MORTGAGE SERVICES INC. can be served with process through its registered agent, C T Corporation System, at 388 State Street Suite 420, Salem OR 97301.

## *SUCCESSOR LENDER*

23.     (*) Defendant HOUSEHOLD FINANCE CORP. II ("Successor Lender") is a Delaware corporation doing business in Oregon, and acquired the Loan from the Lender, and decided to conduct a nonjudicial foreclosure sale, and was/is the purchaser at the nonjudicial foreclosure sale. HSBC MORTGAGE SERVICES INC. owns HOUSEHOLD FINANCE CORP. II and is responsible for all its actions.

24.     Defendant HOUSEHOLD FINANCE CORP. II can be served with process through its registered agent, C T Corporation System, at 388 State Street Suite 420, Salem OR 97301.

## *UNKNOWN OWNERS*

25.     (*) Defendant UNKNOWN OWNERS OF THE EVIDENCE OF THE DEBT and/or OWNERS OF THE NOTE is an unknown corporation.

## *SUCCESSOR TRUSTEE*

26.     Non-party EXAMNET INC. was the original Trustee for the Loan.

27.     Defendant REGIONAL TRUSTEE SERVICES CORP. ("Successor Trustee") is a foreign corporation and is the successor trustee to EXAMNET INC.

5

COMPLAINT

28.    Defendant REGIONAL TRUSTEE SERVICES CORP. can be served with process through its registered agent, Michael J. Farrell, at 888 SW 5th Avenue #900, Portland OR 97204.

29.    Defendants HOUSEHOLD FINANCE CORP. II and REGIONAL TRUSTEE SERVICES CORP. are participating in wrongful foreclosure of the Loan.

### Factual Allegations:

All the following allegations are intended to be "without limitation" and will be supplemented by other facts to be found in discovery.

30.    Plaintiff was and is the owner of the property at **1135 Rainbow Drive, Grants Pass, Oregon 97526** (hereafter "the Homestead"), legally described as:

**COMMENCING AT THE SOUTHEST CORNER OF LOT 82 IN ROGUE RIVER ORCHARD COMPANY'S FIRST SUBDIVISION, JOSEPHINE COUNTY, OREGON; THENCE NORTH, ALONG THE EAST LINE THEREOF, 308.4 FEET; THENCE WEST 20.0 FEET TO A 5/8 INCH IRON ROD FOR THE TRUE POINT OF BEGINNING; THENCE SOUTH 81 DEGREES 32 MINUTES WEST 287.65 FEET (RECORDED 287.22 FEET) TO A 5/8 INCH IRON ROD; THEN 40 DEGREES 04 MINUTES 19 SECONDS WEST 45.22 FEET (RECORD NORTH 39 DEGREES 57 MINUTES WEST 45.25 FEET) TO A 5/8 INCH IRON ROD; THENCE NORTH 58 DEGREES 20 MINUTES 58 SECONDS WEST 51.61 FEET (RECORD NORTH 58 DEGREES 15 MINUTES WEST 51.69 FEET) TO A 5/8 INCH IRON ROD; THENCE SOUTH 37 DEGREES 43 MINUTES 29 SECONDS WEST 310.71 FEET (RECORD SOUTH 37 DEGREES 45 MINUTES WEST 310.87 FEET) TO A 5/8 INCH IRON ROD IN THE CENTERLINE OF BROOKSIDE BLVD; THENCE, ALONG SAID CENTERLINE SOUTH 48 DEGREES 15 MINUTES EAST 146.60 FEET TO A 5/8 INCH IRON ROD IN BROOKSIDE BLVD, NORTH 37 DEGREES 45 MINUTES EAST 312 FEET TO A 5/8 INCH IRON ROD; THENCE NORTH 81 DEGREES 37 MINUTES EAST 249.97 FEET TO A 5/8 INCH IRON ROD; THENCE NORTH 40.0 FEET TO A 5/8 INCH IRON ROD, THE POINT OF BEGINNING.**

31.    Plaintiff is, and has been, in continuous possession of the Homestead.

32.    Plaintiff did not make a forcible entry into the Homestead.

6

COMPLAINT

33. Plaintiff is not unlawfully holding the possession of the Homestead by force.

34. Plaintiff has never sold the Homestead.

### THE "LINE OF CREDIT TRUST DEED" LOAN

35. On or about May 4, 2005, Plaintiff entered into an open-end "Line of Credit" consumer mortgage transaction ("Loan") with the Lender, in the form of a boilerplate adhesion contract drafted by the Lender (MIN 1001371-0001062008-8), in which the purported extended consumer credit was secured by a "Line of Credit Trust Deed" and was subject to a finance charge and was initially payable to the Lender on the face of the Note. The Loan closed on May 4, 2005.

36. (*) MERS was not the true original mortgagee.

37. (*) The Loan was a federally related mortgage loan.

38. (*) The Lender knowingly inserted into the alleged documents several false and/or conclusory statements.

39. (*) No one ever paid any consideration for the aforementioned Loan.

40. (*) The Loan has subsequently been pledged as collateral for other secured transactions.

41. (*) In fact, Plaintiff had not received a loan from the Lender.

42. (*) All named Defendants, and non-party EXAMNET INC., keep accounting entries for the Loan in a "general ledger" or other ledger, showing all changes to Assets, Liabilities and Owner's Equity which were caused by the Loan. These accounting ledger entries can be produced in a form similar to that described in accounting textbooks such as Intermediate Accounting by Donald E. Kieso, Jerry J. Weygandt, and Terry D. Warfield (Wiley, 2003), and Financial Accounting by Paul

COMPLAINT

D. Kimmel, Jerry J. Weygandt, and Donald E. Kieso (Wiley, 2006). These accounting ledger entries show whether or not Plaintiff received a loan from American Brokers Conduit.

43.    (*) Under the "matching" principle of GAAP, the Lender can produce a ledger showing all costs and revenues resulting from the Loan.

44.    (*) The Lender keeps records for all loans, including the Loan, in a form ready to produce for government inspection in case of an audit.

45.    (*) The Loan was endorsed in blank and treated as bearer paper

46.    (*) The Loan was not negotiated to MERS for value.

47.    (*) The Loan was not negotiated to its current holder for value.

48.    Part of the paperwork for the Loan was a purported LINE OF CREDIT TRUST DEED ("Deed"), naming EXAMNET, INC. as Trustee.

49.    (*) EXAMNET, INC. was unaware of this transaction and was never put on notice of this transaction by the Lender.

50.    The Deed stated: "MERS is a separate corporation that is acting solely as nominee for Lender [SECURED FUNDING CORP., A CALIFORNIA CORPORATION] and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument."

51.    (*) However, MERS has never owned any beneficial interest under the Deed. MERS did not provide any capital for the Loan. MERS has never been the recipient of any loan repayment made by Plaintiff.

52.    (*) MERS had a contract with SECURED FUNDING CORP., A CALIFORNIA CORPORATION.

8

COMPLAINT

53.    (*) The party for whom MERS was acting as nominee has changed, however MERS

conceals the identity of the party for whom MERS was acting as nominee, and falsely represents

that MERS is still nominee for the party named in the Line of Credit Trust Deed.

54.    (*) When a loan goes into default, or when a loan is the subject of a lawsuit, MERS

routinely records an assignment from the first owner – the one named in the Mortgage or Deed of

Trust – to the current owner.  However, by that time, MERS is no longer acting as nominee for the

first owner, and there is in fact no assignment directly from the first member to the current

member.  In other words, MERS records a false chain of title.

55.    (*) MERS has gone to great lengths to conceal and hide the beneficial owners and holders

in due course of various mortgage loans and pools of loans.  MERS has never directly produced

information from the MERS® System to third parties, in discovery or otherwise. Pursuant to Rule

9, Section 1(b) of the Rules of Membership, MERS has

> "no ownership rights whatsoever in or to any information contained on the MERS®
> System." It is our position that the information contained on the MERS® System is
> the private, proprietary property of our Members, and that the information should
> be produced, if at all, by the Member who owns the information. This approach
> protects the privacy of the information, and allows our Members to control how and
> when it is distributed.

56.    (*) The information contained in MERS' computer system shows all investors, servicers,

subservicers, and the document custodian who actually is the entity with physical possession of the

note. Such information is easily produced.

57.    (*) MERS keeps records of due diligence and quality control reports; custodian exception

reports; reports of investigations of such loss, theft or destruction; the last sign in and sign out of

COMPLAINT

the promissory note via the custodian's records and register; and receipts of the last mailing or transfer of such note, which are generally made via overnight delivery and/or registered mail.

58.    (*) In at least 50% of foreclosure cases, MERS has claimed the note is lost, but has never filed police or insurance reports, and the "loss" fails to be reflected in the documents listed in the preceding paragraph.

59.    (*) MERS never paid any consideration for the Line of Credit Trust Deed.

60.    The Loan was a "consumer credit transaction" within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z.

61.    (*) At all times relevant to this action, the Lender regularly extended consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and was the person to whom the debt arising from the consumer credit transaction was initially payable on the face of the evidence of indebtedness, thus the Lender is a "creditor" under 15 U.S.C. § 1602(f)(1).

62.    The alleged obligation was secured by the Homestead and principal dwelling of Plaintiff.

63.    The Lender was "the creditor" under 15 U.S.C. § 1635(a).

64.    The obligation was secured by the Homestead and principal dwelling of Plaintiff.

65.    (*) The Lender knowingly inserted into the alleged documents several false and/or conclusory statements.

66.    (*) The Loan was sold before it was funded.

67.    (*) The Lender did not lend its assets to Plaintiff nor for Plaintiff's benefit.

10

COMPLAINT

68.    (*) The Lender did not lend the assets of its depositors, investors, sub-lenders, partners, contractors, or any similar third party, to Plaintiff nor for Plaintiff's benefit.

69.    (*) The Lender did not lend any money to Plaintiff nor for Plaintiff's benefit.

70.    (*) The Lender did not lend nor provide any "dollars," as defined by Congress, to Plaintiff nor for Plaintiff's benefit.

71.    (*) The Lender did not lend any Federal Reserve Notes to Plaintiff nor for Plaintiff's benefit

72.    (*) The Lender did not lend its credit to Plaintiff nor for Plaintiff's benefit.

73.    At closing, the Lender failed to deliver to the Plaintiff a copy of Notice of Right to Cancel, as required by 15 U.S.C. § 1635.

74.    The Lender failed to disclose the last date on which Plaintiff could cancel the loan.

75.    The Lender failed to provide two copies of Notice of Right to Cancel in a form that Plaintiff could keep.

76.    (*) The Lender failed to disclose the true identity of the creditor.

77.    (*) The Loan is part of a loan pool covered by a Pooling and Servicing Agreement, a Master Servicing Agreement, a Subservicing Agreement, a Custodial Agreement, a Trust Agreement, & other agreements to be determined in discovery.  That loan pool is insured with both Mortgage Insurance and Credit Default Swaps and the only way to collect is to foreclose. The Lender keeps records of Mortgage Insurance and Credit Default Swaps related to the Loan.

11

COMPLAINT

78.     A credit default swap is a form of insurance, a variant of mortgage insurance required of many home purchasers – an insurance policy that requires a company with financial strength to step up to the plate and pay the mortgage if for some reason the home buyer defaults.

79.     A credit default swap is similar: If default occurs, an insurance company pays the income stream of the mortgage.

80.     But there is one extremely important difference: Payments are made to the owner of the policy, not to the financial institution that stands to suffer a loss.

81.     Financial institutions are allowed, through total lack of regulation, to buy and sell credit default swaps, or insurance they will be paid in event of default, on financial instruments in which they have no financial interest.

82.     (*) The Lender is not Owner and Holder of the Note.

83.     In June, 2005, the loan was assigned and sold to Defendant HOUSEHOLD FINANCE CORP. II ("Successor Lender").

84.     The Loan is now being serviced by HSBC MORTGAGE SERVICES INC.

85.     (*) HSBC MORTGAGE SERVICES INC. has not credited all payments to Plaintiff's account.

86.     On June 15, 2007, Plaintiff sent Notice of Rescission to the Lender.

87.     On June 15, 2007, Plaintiff sent Notice of Rescission to HSBC MORTGAGE SERVICES.

88.     On or about July 9, 2007, there was a nonjudicial foreclosure sale conducted by Defendant REGIONAL TRUSTEE SERVICES CORPORATION. Defendant HOUSEHOLD FINANCE CORP. II, as holder of the Loan, purchased Plaintiff's home "from themselves".

12

COMPLAINT

89.    (*) The Note is not currently held by a legal entity of the type that is authorized to own and hold Notes (e.g. an individual, corporation, partnership, etc.)

90.    (*) The Holder has discharged the Note by materially and fraudulently altering it, and/or cancelling and/or renouncing it.

91.    If the identity of the owner and holder of the Note is not established now, someone else may show up later holding the Note and sue Plaintiff or otherwise attempt to collect.

92.    Federal Reserve Notes do not trade at par with gold or silver coin.  For example, the American Gold Eagle Ten-Dollar Coin costs more than $10.00 in Federal Reserve Notes, and the Spanish Milled Dollar costs more than one $1.00 Federal Reserve Note.

## First Cause of Action - Quiet Title / Ejectment / Trespass
## (Against All Defendants)

For his first claim for relief, Plaintiff realleges and incorporates the above paragraphs and further alleges:

93.    Before interference by Defendants, Plaintiff was in possession and had been in continuous possession of the Homestead, against all the world, and has paid all lawful property taxes thereon.

94.    Defendants are trespassing on Plaintiff's property.

95.    Plaintiff has superior and legal title to, and other interest in, the Homestead.

96.    At all times relevant to this Complaint, Plaintiff was and is the owner of the Homestead and entitled to such ownership and use without interference by Defendants.

97.    Defendants' claims to any right, title or interest in title and possession of the Homestead are false and without merit, and are void because of the rescission, because of the failure of proper service, because of the misnamed plaintiff on the Judgment, and for other reasons.

13

COMPLAINT

98.      (*) Defendants are not the owners or holders of any promissory note encumbering the Homestead.

99.      Plaintiff bring this suit against Defendants who claim an adverse interest or estate in the Property for the purpose of determining such conflicting or adverse claims, interests or estates.

100.     Plaintiff seek rescission of the loan, Judgment, Order and Decree quieting title to the Homestead in Plaintiff as the date the Complaint in this case was filed, possession of the Homestead, and such further equitable relief as the Court deems proper.

### Second Cause of Action _ Truth in Lending Act (15 U.S.C. § 1601 et seq.)
### (Against Defendants SECURED FUNDING CORP.;
### HOUSEHOLD FINANCE CORP. II)

For his second claim for relief, Plaintiff realleges and incorporates the above paragraphs and further alleges:

101.     (*) The Lender failed to disclose the true identity of the creditor at closing, as required by 15 U.S.C. § 1638(a)(1).

102.     At closing, the Lender failed to deliver to the Plaintiff a copy of Notice of Right to Cancel, as required by 15 U.S.C. § 1635.

103.     Plaintiff timely gave Notice of Rescission.

104.     As a result, the security interests are void.

105.     The Lender and HOUSEHOLD FINANCE CORP. II are jointly and severally liable for recording all necessary documents reflecting the termination of the void security interests within 20 days of receipt of notice of rescission.

### Third Cause of Action - Breach of Contract
### (Against Defendant SECURED FUNDING CORP.)

14

COMPLAINT

106.    For his third claim for relief, Plaintiff realleges and incorporates the above paragraphs and further alleges:

107.    This claim arises under Oregon contract law.

108.    (*) Plaintiff and Defendants entered into enforceable contracts, planned and drafted by Defendants.  Without limitation, the contracts called for the Lender to make "a loan."

109.    (*) The contracts were unconscionable, because they called for performance by Plaintiffs, but called for no performance by Defendants, instead they falsely assumed that Defendants had already performed.

110.   ·  (*) Plaintiff performed all conditions precedent to Defendants' performance.

111.    (*) Defendants unjustifiably breached the contract(s). Without limitation, each Defendant failed to make "a loan."

112.    (*) Plaintiff suffered actual and consequential damages or loss proximately caused by that breach.

113.    (*) Defendants, by breaching the contracts, repudiated them.  Plaintiff hereby indicates that he accepts Defendants' repudiations so that the contracts are discharged.

114.    (*) As a result of Defendants' wrongful actions, Plaintiff suffered actual and consequential damages exceeding $250,000.00 plus, treble damages, punitive damages, and other damages to be determined at trial, for which Defendants are jointly and severally liable.

**Fourth Cause of Action - Unjust Enrichment**
**(Against Defendants MERSCORP, INC.;**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.;**
**HOUSEHOLD FINANCE CORP. II)**

15

COMPLAINT

115.    For his fourth claim for relief, Plaintiff realleges and incorporates the above paragraphs and further alleges:

116.    (*) MERSCORP, INC. is responsible and liable for the actions of its wholly-owned subsidiary, MERS.

117.    (*) In transactions not involving MERS, an Assignment is recorded in the county property records each time a loan is assigned, therefore the identity of the owner of the loan is public record.

118.    (*) In transactions involving MERS, no such Assignments are recorded, therefore the borrower has no way of knowing who owns the loan. MERS, the current owner, and the immediately previous owner are the only parties who know who owns the loan.

119.    (*) Because of MERS' superior knowledge, MERS has more than an ordinary business relationship with borrowers. MERS has a fiduciary duty to inform Plaintiff who owns the Loan.

120.    (*) MERS did not inform Plaintiff who owns the Loan.

121.    HOUSEHOLD FINANCE CORP. II, foreclosing on a void security interest, purchased Plaintiff's property for a price that is so low that it shocks the conscience.

122.    (*) As a result of Defendants' wrongful actions, Plaintiff suffered actual and consequential damages exceeding $250,000.00 plus, treble damages, punitive damages, and other damages to be determined at trial, for which Defendants are jointly and severally liable.

**Fifth Cause of Action - Real Estate Settlement Procedures Act**
**(12 U.S.C. § 2601 et seq.)**
**(Against Defendants MERSCORP, INC.;**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.;**
**HSBC MORTGAGE SERVICES)**

16

COMPLAINT

For his fifth claim for relief, Plaintiff realleges and incorporates the above paragraphs and further alleges:

## COUNT I: RESPA KICKBACK

123.    Plaintiff restates and realleges the above paragraphs as if fully set forth herein.

124.    The claim stated in this Count is brought under RESPA, 12 U.S.C. § 2601, et seq. Plaintiff is a party to a federally related mortgage loan pursuant to 12 U.S.C. §§ 2602(1) and 2607.

125.    As part of the scheme alleged in this Complaint, MERS members including the Lender give, and MERS accepts, kickbacks pursuant to an agreement or understanding that business incident to or part of real estate settlement services involving federally related mortgage loans shall be referred to MERS. The Lender gave such a kickback in this case. Such kickbacks violate 12 U.S.C. § 2607(a) and are not waivable violations.

126.    When a MERS member, including the Lender, originates a federally related mortgage loan, including the loan in dispute, and registers the note and mortgage with MERS, it passes on the $3.95 MERS registration fee to the borrower. It passes on the fee by including it within the fees disclosed on the HUD-1 Settlement Statement.

127.    The MERS member, including the Lender, kicks back to MERS the $3.95 registration fee received from the borrower, including Plaintiff, upon payment of the settlement costs. This kickback is payment for avoidance of government recording fees for all subsequent transfers of any interest in the mortgage. Such avoidance is made possible by the MERS registration system.

17

COMPLAINT

128.    The MERS member, including the Lender, kicks back the MERS registration fee to MERS

pursuant to an agreement or understanding that the business of registering all subsequent sales of

the note and mortgage should be referred to MERS. Such kickbacks violate 12 U.S.C. § 2607(a).

129.    Such kickbacks occurred in connection with the settlements of the federally related

mortgage loans to which Plaintiff was a party.

130.    Pursuant to 12 U.S.C. § 2607 Plaintiff is entitled to three times the amount charged for the

settlement services involved and Plaintiff is further entitled to costs and attorneys fees, to be paid

by the Defendants.

### COUNT II: RESPA UNEARNED CHARGES

131.    Plaintiff restates and realleges the above paragraphs as if fully set forth herein.

132.    As part of the scheme alleged in this Complaint, MERS members including the Lender

charge the borrower and pass on to MERS, and MERS accepts, the $3.95 MERS registration fee

that is assessed to the Lender in connection with federally related mortgage loans. Defendants pass

this charge on to the borrower even though the borrower does not benefit from this service. This

charge is made to and received from the borrower for services that do not benefit the borrower.

133.    The service actually performed for the borrower is payment of government recording fees.

The $3.95 MERS registration fee is a charge for a service other than payment of government

recording fees. The charging of this $3.95 MERS registration fee to the borrower, and the giving

by MERS members and acceptance by MERS of this fee violates 12 U.S.C. § 2607(b) and is not a

waivable violation.

COMPLAINT

134.    Such charges for a service not actually performed occurred in connection with the

settlements of federally related mortgage loans to which Plaintiff was a party.

135.    (*) As a result of Defendants' wrongful actions, Plaintiff suffered actual and consequential

damages exceeding $520,000.00 plus, treble damages, punitive damages, and other damages to be

determined at trial, for which Defendants are jointly and severally liable.

## COUNT III: RESPA SERVICING

136.    On February 26, 2008, Plaintiff, through notary David A. Greene, provided a written letter

to Defendant HSBC MORTGAGE SERVICES at PO BOX 9068, Brandon, FL, 33509-9068, via

Certified Mail 7006 2150 0002 7793 3217, that included Plaintiff's name and account number, and

provided sufficient detail to the servicer regarding information sought by Plaintiff, satisfying

section 6 of RESPA.  That letter constituted a "qualified written requests."

137.    HSBC MORTGAGE SERVICES failed to respond within 60 days.

138.    (*) As a result, Plaintiff suffered actual and consequential damages and other damages to

determined at trial, including but not limited to wrongful foreclosure.

139.    Plaintiff is entitled to an accounting from each Defendant of all funds handled in any way

concerning the mortgage loan.

### Sixth Cause of Action - Nuisance / Wrongful Foreclosure
### (Against Defendants REGIONAL TRUSTEE SERVICES CORP.;
### HOUSEHOLD FINANCE CORP. II)

For his sixth claim for relief, Plaintiff realleges and incorporates the above paragraphs and

further alleges:

19

COMPLAINT

140.    Defendant HOUSEHOLD FINANCE CORP. II knowingly initiated a nonjudicial foreclosure on a void security interest, on a loan that had been rescinded.

141.    Defendant REGIONAL TRUSTEE SERVICES CORPORATION knowingly conducted a nonjudicial foreclosure on a void security interest, on a loan that had been rescinded.

142.    (*) Neither HOUSEHOLD FINANCE CORP. II nor  REGIONAL TRUSTEE SERVICES CORPORATION have any right to foreclose, because they are not the owner and holder of the Note.  Instead, the owner and holder of the Note is a "Special Purpose Entity" / "Special Purpose Vehicle" shell corporation.

143.    Defendants' unauthorized foreclosure attempts prevent Plaintiff's quiet enjoyment of the property, and constitute a nuisance which should be abated.

### Prayer for Relief:

144.    Plaintiff pray this honorable Court take jurisdiction of this case.

145.    Plaintiff pray for Decrees and Judgments as follows:

146.    Enjoin, immediately, all Defendants, during the pendency of this action, and permanently thereafter, from recording any mortgages regarding the Homestead;  from selling, assigning or transferring mortgages or obligations relating to the Homestead;  from instituting, prosecuting, or maintaining nonjudicial or judicial foreclosure proceedings against the Homestead;  from instituting, prosecuting, or maintaining ejectment or F.E.D. proceedings against Plaintiff;  or from otherwise taking any steps to deprive Plaintiff of ownership and/or enjoyment of the Homestead.

147.    Award to Plaintiff his reasonable costs, disbursements and prejudgment interest.

148.    Declaratory judgment that the alleged contract is unconscionable.

20

COMPLAINT

149.   Declaratory judgment that Plaintiff has clear title to the property, free from any

encumbrances by Defendants, and that Defendants have no valid security interest in Plaintiff's

property, or in the alternative, reformation of the contract.

150.   An accounting from each Defendant of all funds handled in any way concerning the

mortgage loan.

151.   On Plaintiff's First Claim (Quiet Title / Ejectment / Trespass):

      (A) An Order annulling the sale, and a Judgment and Decree quieting title in favor

of Plaintiff as of the date the Complaint in this case was filed;

      (B) Restore Plaintiff to possession of the Homestead;

      (C) Order all Defendants to rescind and cancel the alleged loan in its entirety and

return to Plaintiff any and all of his original signed documents;

      (D) Order all Defendants to take all action necessary to terminate any security in the

Homestead created under the transaction and that the Court declare all such security void,

including but not limited to the aforementioned mortgage.

152.   On Plaintiff's Second Claim (TILA): a Judgment and Decree for rescission of the loan,

punitive damages, actual damages, attorney fees and costs against SECURED FUNDING CORP.

and HOUSEHOLD FINANCE CORP. II, which are jointly and severally liable;

153.   On Plaintiff's Third Claim (Breach of Contract):

      (A) a Judgment and Decree for $250,000.00, interest, punitive damages, actual

damages, attorney fees and costs, against SECURED FUNDING CORP.;

COMPLAINT

(B) Order Defendant to rescind and cancel the alleged contract in its entirety and return to Plaintiff any and all of their original signed documents; or in the alternative, money judgment in an amount sufficient to retire the alleged contract;

154.    On Plaintiff's Fourth Claim (Unjust Enrichment): a Judgment and Decree for $250,000.00, interest, punitive damages, actual damages, attorney fees and costs, against MERSCORP, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. and HOUSEHOLD FINANCE CORP. II, for which they are jointly and severally liable;

155.    On Plaintiff's Fifth Cause of Action (RESPA):

A. An award of judgment entitling Plaintiff to all remedies set forth in 12 U.S.C. § 2607.

B. An award of judgment entitling Plaintiff to all remedies set forth in 18 U.S.C. § 1964(c).

C. An award to Plaintiff of all other remedies that equitably and reasonably flow from Defendants' breaches of federal law and the obligations that arise therefrom;

D. a Judgment and  Decree in favor of Plaintiff against MERSCORP, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. and HSBC MORTGAGE SERVICES, actual damages in the amount of $75,000 or an amount to be proven at trial, statutory damages, other general and consequential damages, punitive damages, money judgment in the amount of $75,000 or an amount sufficient to retire the contract; and for such other relief as the Court deems just and proper to be ascertained at trial.

156.    On Plaintiff's Sixth Claim Nuisance / Wrongful Foreclosure: an order annulling the sale, and an order that REGIONAL TRUSTEE SERVICES CORP. and HOUSEHOLD FINANCE CORP. INC. abate the nuisance by ceasing their unauthorized foreclosure attempts.

COMPLAINT

157.    Such other relief as the Court deems just and proper.

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  See 28 U.S.C. 1746.

Executed on:__12_/__8_/2008

_____

Jeffrey Rice
c/o P.O. Box 1474
Grants Pass, Oregon 97528

23

COMPLAINT